UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| ADOBE SYSTEMS INC., | No. C 10-03575 SC (LB) |
| Plaintiff, | **ORDER REGARDING MAY 18, 2011 JOINT DISCOVERY LETTER** |
| v. | |
| REZA DAVACHI, *et al.*, | **[ECF No. 32]** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Adobe sues Defendants, who sell Adobe products on eBay, for alleged copyright and trademark infringement. Complaint, ECF No. 1 at ¶ 1.[1] The district court referred discovery disputes to this court. The pending dispute is whether Scott Bain, who is Chief Litigation Counsel and Director of Internet Anti-Piracy for the Software and Information Industry Association (SIIA), may review – if Adobe designates him "Designated House Counsel" as defined in the Northern District's stipulated protective order for patent and trade secret cases – documents marked **"confidential" or "highly confidential – attorneys' eyes only**." Joint Letter, ECF No. 32.

After a hearing on June 27, 2011, the court ordered disclosure as set forth below.

## II. RELEVANT FACTS

The issue is about Mr. Bain's access to documents about Defendants (presumably their sales

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

ORDER
C 10-03575 SC( LB)

1 information for Adobe products) produced from subpoenas to five nonparties: Google, Amazon,
2 iOffer, Infopia, and Paypal. *Id.* at 1. (Defendants initially filed a motion to quash the subpoenas, but
3 after the parties complied with the court's meet and confer procedures for discovery disputes, they
4 narrowed the scope of the document production and now challenge only whether Mr. Bain may
5 review the documents as a "Designated House Counsel" under the protective order. Motion, ECF
6 No. 23; 5/5/11 Order, ECF No. 27; Joint Letter, ECF No. 32.)

**A. Relevant Definitions From Protective Order**

The following are relevant definitions and disclosure requirements from the Northern District of California's "Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets." The parties agree that the protective order defines the scope of the obligations at issue in this dispute.

**1. Definitions of counsel, parties, and experts**

The first set of relevant terms are the definitions of counsel, parties, and experts.

2.3: Counsel (without qualifier): outside counsel of record and house counsel (and staff).

2.4: Designated House Counsel: House counsel seeking access to "Highly Confidential – Attorneys' Eyes Only" information.

2.10: House Counsel: attorneys who are employees of a party to the action. House counsel does not include outside counsel of record or any other outside counsel.

2.12: Outside Counsel of Record: attorneys who are not employees of a party to this action but who are retained to represent or advise a party and have appeared in the action on the party's behalf (or are affiliated with the law firm appearing for the party).

2.7: Expert: retained by a party or counsel who is not a past or current employee of the party or a party's competitor and is not anticipated to become an employee of the party or competitor.

2.13: Parties: party (including officers, directors, employees, consultants, retained experts, and outside counsel of record (and their support staffs)).

**2. Review of Protected Materials**

Protected materials are those designated "confidential" or "highly confidential – attorneys' eyes only." The parties do not dispute that the documents are "confidential" or "highly confidential –

attorneys' eyes only" documents. The issue is, who is allowed to review those documents.

"Confidential" information may be disclosed to the following persons who sign an acknowledgment of the protective order's requirements (attached to protective order as Exhibit A): (a) the receiving party's outside counsel of record (and necessary staff); (b) the receiving party's officers, directors, and employees (including house counsel); and (c) experts (as defined above). Protective Order, ¶ 7.2.

"Highly Confidential – Attorneys' Eyes Only"information may be disclosed to the following persons who sign the acknowledgment: (a) outside counsel of record (and necessary staff); (b) experts (as defined above); and (c) "Designated House Counsel" (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to be Bound" (Exhibit A to the protective order), and (4) as to whom the procedures in paragraph 7.4(a)(1) have been followed. Stipulated Protective Order, paragraph 7.3(b). Paragraph 7.4(a)(1)'s procedures are as follows:

> Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making.[8]
>
> [8] It may be appropriate in certain circumstances to require any Designated House Counsel who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information pursuant to this Order to disclose any relevant changes in job duties or responsibilities prior to final disposition of the litigation to allow the Designating Party to evaluate any later-arising competitive decision-making responsibilities.

**B. Mr. Bain's Position**

Mr. Bain is the Chief Litigation Counsel and Director, Internet Anti-Piracy for the Software and Information Industry Association (SIIA). Joint Letter, ECF No. 32 at 2. The SIIA is a trade organization with 23 members other than Adobe, and it advocates on behalf of its members. *Id.* at 4. According to Defendants, those advocacy efforts are directed toward anti-piracy. *Id.* at 3.

SIIA does not sell software or compete with Defendants or others in the business of software sales. *Id.* It does have a "Premium Reseller Program." Interested resellers apply to the SIIA and must meet criteria to be certified (including the criterion that they comply with software licensing

1 restrictions.) *Id.* at 3, 5 & ECF No. 32-1 at 1.  If the SIIA certifies them, the reseller can use the
2 "Premier Reseller" as a designation in conjunction with their business (like a Better Business Bureau
3 or cnet designation).  *Id.* at 4.

4     As is apparent from this lawsuit, SIIA manages anti-piracy litigation for its members.  According
5 to Adobe, it has assigned SIIA the "full authority to manage and settle this action."  *Id.* at 3.  SIIA
6 has Adobe's power of attorney such that only SIIA can execute any settlement documents.  *Id.* at 4.
7 SIIA *is* the Plaintiff, and Mr. Bain is SIIA's counsel.  *Id.*

### III. ANALYSIS

9     Boiled down, Adobe's argument is that SIIA is Adobe for purposes of this lawsuit, and Mr. Bain
10 is thus "house counsel."  According to Adobe, Mr. Bain will sign the standard acknowledgment,
11 comply with the protective order, and follow the procedures in section 7.4(a)(1) of the order (as set
12 forth above.).  He also meets the requirements of a "Designated House Counsel" because (1) he has
13 no involvement in competitive decision-making, and (2) disclosure to him (as essentially standing in
14 Adobe's shoes with the settlement authority) is reasonably necessary for this litigation.  Joint Letter,
15 ECF No. 32 at 4-5 (citing protective order sections).  Defendants respond that SIIA is not Adobe but
16 instead is an anti-piracy organization that should not gain access to Defendants' confidential and
17 proprietary information about sales of Adobe products, in part because it would give SIIA
18 advantages for its reseller certification.  *Id.* at 3.

### A. General Legal Standards

20     Under Federal Rule of Civil Procedure 26(c), a party may move for, and the court may issue for
21 "good cause," a protective order to protect the party from "annoyance, embarrassment, oppressions,
22 or undue burden or expense."  Defendants have the burden of showing good cause, which means that
23 they must show a particular and specific need for the order.  *See Blankenship v. Hearst Corp.*, 519
24 F.2d 418, 429 (9th Cir. 1975); *Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475 VRW
25 (EMC), 2010 WL 4704420, at *1 (N.D. Cal. Nov. 12, 2010) (citing *Phoenix Solutions Inc. v. Wells
26 Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal.2008)).

27     Defendants here seek an order because – they assert – the information produced would reveal
28 trade secrets and proprietary, confidential information.  When access to trade secrets is at issue, a

**UNITED STATES DISTRICT COURT**
For the Northern District of California

court should determine the "factual circumstances of *any* counsel's relationship to the party demanding access" and balance the risk of inadvertent disclosure to competitors against the risk that protection of the trade secrets would impair prosecution of the claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphasis in original) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). Where a counsel is involved in "competitive decision-making," and denial of the information would not prejudice the ability of that party to litigate its case, courts generally deny that counsel access to the information. *See, e.g., Intel Corp. v. VIA Tech., Inc.*, 198 F.R.D. 525, 528-30 (N.D. Cal. 2000). On the other hand, where a counsel is not involved in "competitive decision-making" and denial of the information would prejudice that party's ability to litigate its case, courts generally permit discovery subject to a protective order. *See Nazomi Communications, Inc. v. ARM Holdings PLC*, No. C 02-02521 JF, 2002 WL 32831822, at *2-*3 (N.D. Cal. Oct. 11, 2002); *U.S. Steel*, 730 F.2d at 1468 ("Because the present litigation is extremely complex and at an advanced stage, and because present in-house counsel's divorcement from competitive decisionmaking has been accepted by the [Court of International Trade], forcing [U.S. Steel] to rely on newly retained counsel would create an extreme and unnecessary hardship.").

**B. Discussion**

Here, Mr. Bain is not retained outside counsel, and he is not an employee of Adobe. Instead, he is general counsel for a non-party (SIIA) who has Adobe's power of attorney in the lawsuit. The parties essentially dispute whether Mr. Bain is a "Designated House Counsel" (basically, the equivalent of an employee of Adobe) entitled to review the protected information. Because the court evaluates "*any* counsel's relationship to the party demanding access," *Brown Bag*, 960 F.2d at 1470, the court evaluates first the nature of the attorney relationship (and the relationship of Adobe and SIIA) and then evaluates the extent of Mr. Bain's involvement in competitive decisionmaking and prejudice.

**1. SIIA's Involvement In Litigation**

Neither party cites any cases addressing whether an assignment of rights (like the one Adobe asserts here) essentially renders a non-party the equivalent of a party (and thus Mr. Bain the

equivalent of an Adobe lawyer for purposes of this litigation).  Defendants do not dispute that Adobe assigned SIIA the "full authority to manage and settle this action," and gave it its power of attorney such that only SIIA can execute any settlement documents.  Joint Letter, ECF No. 32 at 3-4.  But – as Defendants note – SIIA is not a party.

As discussed more in the next section, SIIA's counsel is not like Adobe's counsel because SIIA is not a party.  But what drives the court's inquiry is the need to protect a party's confidential information from potentially harmful revelation while simultaneously permitting the opposing party to effectively litigate the claim.  *See Brown Bag*, 960 F.2d at 1470.   Thus, in the next section, the court analyzes the disclosure to him (as it would to any other counsel demanding access), fully considering his employment with SIIA.

**2. Involvement in Competitive Decision-Making and Prejudice**

In *U.S. Steel*, the Federal Circuit defined "competitive decision-making" as a "shorthand for counsel's activities, association, and relationship with a client that are such as to involve the counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  *See U.S. Steel*, 730 F.2d at 1468 n.3; *see also Brown Bag*, 960 F.2d at 1470 (citing *id.*).  Because a counsel is unable to "lock-up trade secrets in his mind," the terms of a protective order and the good-faith assurances of an ethical counsel are insufficient on their own to safeguard the inadvertent disclosure of trade secrets.  *See Brown Bag*, 690 F.2d at 1471; *Intel Corp.*, 198 F.R.D. at 530-31.  Instead, in the context of in-house counsel, courts must determine whether knowledge of the trade secret information would place counsel in the "untenable position" of either refusing his employer legal advice or revealing the trade secrets.  *See id.* at 1471.  The concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor.  *U.S. Steel*, 730 F.2d at 1468 n.3.

Nothing in the joint discovery letter suggests that SIIA has any involvement in Adobe's product decisions or is any way involved in products that compete with Defendants' products.  Instead, it is a trade association engaged in anti-piracy efforts.  And its "Preferred Reseller" certification – as Adobe points out – is more like a good business stamp of approval that does not alter this analysis. So this case is not like a normal trade secrets case with competitors of infringing products.  Instead,

ORDER
C 10-03575 SC( LB)
6

this case is about selling allegedly unauthorized products.

At the same time, an anti-piracy organization that manages anti-piracy litigation and efforts for its 24 members may have an interest in protected information beyond the current litigation involving Adobe. For example, SIIA might be able to gain access to information beyond the Adobe products at issue here that might be valuable to other litigation against Defendants by other members. *See Intel Corp.*, 198 F.R.D. at 531; *Shared Memory Graphics*, 2010 WL 4704420 at *1 ("where the party asserting infringement is in the business of acquiring intellectual property and enforcing it against other entities using the allegedly infringing technology, '[t]here is little doubt' that the alleged infringer's confidential information could be of value") (quoting *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, No. 6:07-CV-346, 2008 WL 5634214, at *6 (E.D.Tex. Mar.14, 2008)). If that is true, Mr. Bain cannot "turn off" his knowledge and instead would have information relevant to litigation by other SIIA members.

At the hearing, the court discussed whether Mr. Bain's access to information could be limited, possibly to a defined universe of sales figures of a defined group of allegedly infringing products. But as Defendants pointed out, what is at issue here is access to sales and customer information and information about the reseller's market. It is this kind of information – Defendants assert – that is of interest to an anti-piracy organization like SIIA. Given that SIIA has 23 other members (and presumably could pursue similar litigation on their behalf), it seems hard to imagine how Mr. Bain could ever wear a fully "Adobe in-house counsel" hat.

For this reason, the court does not believe it can balance the relevant interests here and grant any access to Mr. Bain. SIIA is not a party, and it cannot pretend to be a party's "Designated House Counsel." If SIIA wants to be party, it should become a party, and then perhaps the analysis would change. The court understands that Adobe says that it cannot manage its litigation without Mr. Bain, but issues regarding in-house counsel's access to protected material are always at play in cases like this. And Adobe has not really said why – given competent outside counsel – its ability to litigate is prejudiced (not merely made more difficult to manage). *See, e.g., Intel Corp.*, 198 F.R.D. at 528. Also, Adobe chose this approach of using an organization that pursues litigation for other members, and restricting that non-party's organization's access to materials beyond sales information for the

Adobe products is needed to protect Defendants' confidential information.

## IV.  CONCLUSION

The court denies access to Mr. Bain.  The stipulated protective order and this court's procedures for discovery disputes will govern any challenges to particular documents going forward.

This disposes of ECF No. 32.

**IT IS SO ORDERED.**

Dated: July 1, 2011

_____
LAUREL BEELER
United States Magistrate Judge